Samuel Shoenblum, an Infant, by Joseph Shoenblum, his Guardian ad Litem, Appellant, *v.* The City of New York, Respondent.

*Negligence — starting a horse, without looking, in a street where a number of school children are — it presents a question for the jury.*

Where a horse and cart, into which an employee of the city of New York was engaged in emptying ashes, stood at the side of a residential street in that city, at a time when it was crowded with children coming home from school, the question whether the driver was guilty of negligence in starting his horse without looking to see whether it was safe to do so, in consequence of which the horse at his first step knocked down a boy five years old, should be submitted to the jury.

Van Brunt, P. J., dissented.

Appeal by the plaintiff, Samuel Shoenblum, an infant, by Joseph Shoenblum, his guardian ad litem, from a judgment of the Supreme

Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 17th day of October, 1900, upon the dismissal of the complaint by direction of the court after a trial at the New York Trial Term.

*Louis J. Vorhaus,* for the appellant.

*Theodore Connoly,* for the respondent.

RUMSEY, J.:

This was an action to recover damages for the negligence of an employee of the defendant, which resulted in a serious injury to the infant plaintiff. The complaint was dismissed at the close of the plaintiff's case. In considering this appeal, therefore, all facts which the evidence tends to establish and all fair inferences which the jury might have drawn from the testimony in favor of the plaintiff, must be resolved in his favor (*Rehberg* v. *Mayor*, 91 N. Y. 137, 141), and the only question is whether, upon those facts and from such inferences, the jury would have been justified in finding a verdict for the plaintiff.

The plaintiff was a boy five years and two months old; he had been going to school for about a month; the accident occurred at noon; he was on his way home and had met his mother in front of the house where they lived; she gave him a penny with which to buy some candy at a stall across the street, and he had done so and was on his way back to her when the accident took place.

It occurred in Rivington street. It may fairly be inferred from the evidence that this is not a business street, but that there stand upon it many tenement houses in which live a large number of children. The testimony is that at the time of the accident the street was crowded with children coming home from school. There stood at the side of the street a horse and cart, into which one of the employees of the defendant was engaged in emptying ashes. The horse was standing still; the boy in going to his mother ran closely in front of him, and, just as the child got in front of the horse, the driver not seeing the boy started the horse, which at his first step knocked the boy down so that the wheel of the cart passed over his leg and he was injured. No question of the contributory negligence of the boy or his mother was raised, and that clearly in any case would be a question for the jury.

The only question is, whether it can be said that the driver was guilty of negligence in starting his horse without looking to see that it was safe to do so. What is due care in such cases depends entirely upon the condition of affairs at the time the occurrence took place. This driver was engaged in emptying ash cans into his cart; when he finished emptying the particular can he did not look to see what, if anything, was in front of his horse before starting him up. Under ordinary circumstances it may be that he was not called upon to do so, but there were some other facts in this case which may take it out of the ordinary rule. The time was at noon; the children were just out of school and the street was full of them. Under such circumstances, a person who has occasion to drive a horse on such a street is bound to take notice of the fact that the children are there and to see that no harm comes to them from anything he does. The care they were bound to exercise was only such as persons of their age would be likely to take, and the care of the person driving the horse must be proportionate to the exigency confronting him. So that if he had been surrounded by adults, or if he had not been aware that there were children in the street, it may be that he would not have been called upon to see whether any child might be hurt when he started up his horse, yet as he knew that the street was full of children as must be assumed from the evidence, we cannot say that in starting up his horse as he did without looking to see whether there were any children in such a situation that they might be injured thereby, he used that degree of care which the circumstances imposed upon him.

For this reason we think that the question of the driver's negligence was one for the jury, and that the learned justice below erred in taking it away from them. The judgment must, therefore, be reversed and a new trial granted, with costs to the appellant to abide the result.

PATTERSON, O'BRIEN and McLAUGHLIN, JJ., concurred; VAN BRUNT, P. J., dissented.

VAN BRUNT, P. J. (dissenting):

I think the judgment in this case should be affirmed. There was no evidence of any negligence upon the part of the employee of the city. It cannot be possible that every time an ashman moves his

cart from house to house in the middle of the block, he must search in and around his vehicle and horse to make sure that there is no one standing near who will be knocked down and injured the moment his horse raises his foot; and it is because the driver did not do this that it is held that he was guilty of negligence.

Judgment reversed, new trial ordered, costs to appellant to abide event.